**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | CASE NO. 26-11867-RAM |
| BLOOM HOTELS 6060, LLC,[1] | Chapter 11 |
| Debtor. | |
| _____/ | |

**DEBTOR'S MOTION TO EXTEND**
**EXCLUSIVITY PERIODS UNDER 11 U.S.C. § 1121(D)**

Debtor, Bloom Hotels 6060, LLC, as debtor-in-possession (the "Debtor"), files this Motion, pursuant to 11 U.S.C. §§ 105 and 1121(d), for entry of an order, substantially in the form of the proposed order attached as *Exhibit A*, granting 60-day extensions of both the Debtor's plan filing and plan solicitation exclusivity periods (the "Motion"). The Debtor's secured creditor De Paz Family Investments, LLC opposes this request. The Debtor's other significant stakeholder, the City of Miami Beach ("City"), does not oppose this request. The Office of the United States Trustee ("UST") takes no position on this request at this time. In support of thd Motion, Debtor states:

**REQUESTED RELIEF AND CAUSE FOR RELIEF**

1.    The Debtor requests, *for the first time*, a brief 60-day extension of: (i) the 120-day exclusivity period, which expires on June 16, 2026, to August 17, 2026, and (ii) of the 180-day plan solicitation period, which expires August 17, 2026, to October 16, 2026. Cause exists for

---

[1] The Debtor in this Chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: BLOOM HOTELS 6060, LLC (4660). The mailing address and principal place of business of the Debtor is 2937 SW 27th Ave, Ste 201, Coconut Grove, FL 33133.

these brief extensions to provide the Debtor with the time needed to finalize its plan funding commitment letter, exhaust plan treatment negotiations with DPFI with the soon-to-be secured plan funding finalized, and to further negotiations with the City regarding mitigation of the existing approximately $2.5 million in municipal invoices, fees, and liens set forth in the City's Proof of Claim. The Debtor will move as expeditiously as possible to finalize the plan funding commitment letters, DPFI plan treatment negotiations, and City lien mitigation plans but at this point it believes a 60-day extension is best to attempt to avoid the need to request additional extensions.

2.      Cause exists principally because the Debtor is in the final stages of negotiating the terms of the plan funding that the recently selected plan sponsor will provide to support the Debtor's Chapter 11 plan of reorganization in this non-SARE commercial real property Chapter 11 reorganization. The Debtor, for the last 120 days, has been in active and productive negotiations with multiple different counterparties in the capital markets to fund its reorganization. The nature of structuring a plan sponsorship agreement that addresses the Debtor's needs for plan funding where the Debtor is currently in a stalled redevelopment phase and subject to the City's liens and claim is complex. Over the last 30 days, the Debtor has identified the principal redevelopment path and primary plan sponsor. The Debtor has also engaged in productive negotiations with the City, which agreed to continue the next special magistrate hearing to mid-August 2026 to provide the Debtor with the needed time to finalize and implement a redevelopment strategy that concomitantly mitigates the outstanding municipal liens and claims. While the Debtor has made significant progress, it requires a brief extension of the exclusivity periods to finalize the plan sponsorship terms and City mitigation strategy to incorporate into its Chapter 11 reorganization plan structure.

## JURISDICTION, VENUE, AND CORE PROCEEDING

3.      This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

4.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

5.      The statutory predicates for the requested relief are 11 U.S.C. §§ 105(a) and 1121(d), and Local Rule 9013-1.

## PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

### *Petition Date, Principal Asset, Filing Purpose, and Case Progress*

6.      On February 16, 2026 ("Petition Date"), the Debtor filed a voluntary petition with this Court for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq*.

7.      The Debtor is in possession and operating its business pursuant to §§ 1107 and 1108, and the UST has not appointed a statutory committee.

8.      The proof of claims bar date occurred on April 27, 2026, and DPFI, the City, the Miami-Dade County Tax Collector's Office, a real estate tax certificate holder, and one other unsecured creditor filed claims.

9.      The Debtor owns the real property and improvements located at 6060 Indian Creek Drive, Miami Beach, Florida 33140 (the "Property"). The Property is non-operating and vacant while the Debtor finalizes its redevelopment plan, financing commitment, and municipal lien mitigation strategy.

10.     The Debtor filed this case to preserve the equity in the Property for all constituencies, and to reorganize and exit Chapter 11 with an improved balance sheet to be able to

3

execute its redevelopment of the Property for the benefit of the City of Miami Beach and its residents.

11. Once the Debtor commenced this case, management focused on three primary goals: (i) formalizing a clear redevelopment strategy that maximizes the value of the Property under the most feasible path; (ii) securing the necessary funding to confirm a Chapter 11 plan of reorganization and emerge from bankruptcy recapitalized and poised to execute on its selected redevelopment strategy; and (iii) mitigating the legacy municipal code enforcement liens the City had placed on the Property prior to the Debtor's current ownership group's involvement with the Property.

12. Over the past 120-days, the Debtor's management has explored redevelopment strategies ranging from: (i) complete demolition of the existing 85-unit structure to rebuild a brand new structure using the "Live Local" Act zoning and density benefits: (ii) utilizing the existing structure and condo-hotel legacy to reopen as a branded hotel; and (iii) utilizing the existing structure to sell studio condominium units within a condo-hotel program, complemented by retail, food and beverage, and a private membership club component. The Debtor has now selected the third option as its redevelopment plan. The Debtor recently encountered a minor issue involving a difference in actual square footage of the structure and the reported square footage on City records, which required reconfiguring an aspect of the strategy and financial models. The Debtor has now resolved this issue and crystalized its redevelopment model and strategy.

13. Simultaneously, the Debtor's management has also been negotiating with multiple parties in the capital markets regarding various structures to fund the Debtor's Chapter 11 reorganization plan's financial components. In the last 60 days, the Debtor distilled those negotiations down to two groups. In the last few weeks, the Debtor selected a group and is in the

4

process of finalizing a plan funding commitment letter with the selected group who will serve as the plan sponsor. The aforementioned issue concerning the actual versus reported square-footage required unanticipated negotiations around this point by the parties and they have now aligned on this issue and are finalizing the remaining aspects of the plan funding term sheet. The Debtor anticipates finalizing the plan funding commitment letter within upcoming weeks but files this motion in an abundance of caution and to provide additional time to continue negotiations with DPFI to work toward a consensual plan if possible.

14.    Finally, the Debtor's management has been actively engaged in negotiations with the City concerning its $2.5 million claim and related municipal liens against the Property. The Debtor intends to mitigate those liens through the permitting process, which it understands will substantially reduce the liens to an amount that the Debtor can satisfy through its Chapter 11 plan of reorganization.

### The Debtor's Primary Secured Creditor—DPFI

15.    The Debtor's primary secured creditor is DPFI, which claims the Debtor owes it approximately $24.7 million as of April 27, 2026, based upon a pre-petition foreclosure judgment. *See* DPFI Claim No. 5. Critically, DPFI, in its sworn Proof of Claim, stipulated that it is oversecured and that the fair market value ("FMV") of the Debtor's Property on an "As Is" basis is approximately $38 million. *See id.* This stipulation as to value shows DPFI is protected by a substantial equity cushion (~$38 million - ~$24.7 million = ~$13.3 million) and maintains a favorable loan to value ratio ("LTV") (~$24.7 million/~$38 million = 66%). With such a favorable, stipulated secured status (equity cushion and LTV), any resistance to the Motion by DPFI shows its true strategy is to capture the equity in the Property for itself to the detriment of the Debtor's other creditors, including the City, and the Debtor's equity holders, who have already paid DPFI

approximate $4 million to date on this $21 million loan. The Debtor engaged DPFI in negotiations concerning agreed upon claim treatment, but those negotiations have not resulted in alignment on plan terms to date. The Debtor is hopeful that proof of plan funding will help facilitate consensual claim treatment.

### *The Debtor's Other Major Stakeholder—the City*

16.     The Debtor's current ownership group acquired the membership interests in the Debtor and, therefore, acquired the Debtor and the Property with legacy existing City code enforcement liens, which largely arise from individual unit owners' unpermitted renovations on their individual units. Those individual unit owners no longer own those units, the Property has bee vacant for years and the unauthorized renovations have already been or will be removed through the redevelopment process.

17.     The Debtor's current ownership group engaged with the City in negotiations pre-petition to curtail the daily accrual of fines and to inform the City about their intentions for redevelopment of the Property. But given the legacy nature of the liens and the daily accrual of some of the fines prior to the Debtor's current ownership's progressive remediation efforts, the City's claim had already compounded substantially and now sits at approximately $2.5 million.

18.     At the City's most recent special magistrate hearing on April 28, 2026, at the recommendation of the City's attorney, the special magistrate agreed to continue the next municipal hearing to mid-August 2026. By doing so, the City showed its commitment to providing the Debtor with time to formalize its redevelopment plan and begin its lien mitigation strategy through applying for and obtaining permitting to commence work on the Property, which the Debtor understands will result in substantial mitigation of the City's $2.5 million claim.

19.     The Debtor seeks the 60-day extension of the exclusivity and solicitation periods to finalize negotiations with the City concerning a lien mitigation resolution that will clear up title to the Property, which is a critical redevelopment milestone, and which will increase the value of the Property.

## AUTHORITY FOR REQUESTED RELIEF

20.     Congress established a Chapter 11 debtor's plan filing exclusivity period when it stated the following in § 1121(b): "Only the debtor may file a plan until after 120 days after the date of the order for relief under chapter 11." 11 U.S.C. § 1121(b). Debtors are also entitled to 60 additional days to solicit acceptance of their plans. *See id.*

21.     Congress also provided courts with the flexibility to modify the Chapter 11 exclusivity periods. Specifically, pursuant to § 1121(d), after notice and a hearing, a court may increase or decrease the exclusivity and solicitation periods for cause on the request of a party in interest made within the respective periods. *See* 11 U.S.C. § 1121(d). Filing of the motion to extend prior to the expiration of the exclusivity period maintains the exclusivity period pending the Court's ruling on the Motion. *See* 11 U.S.C. § 1121(d); *In re Mich. Produce Haulers, Inc.*, No. BG 14-03188, 2015 Bankr. LEXIS 944, at *8 (Bankr. W.D. Mich. Mar. 19, 2015) (noting the pendency of the debtor's motion to extend exclusivity when the creditor filed its competing plan). The Debtor files this Motion prior to the June 16 expiration of plan filing exclusivity, which maintains the Debtor's exclusivity period pending the Court's resolution of the Motion. *See id.*

22.     Courts, when considering a motion to modify the exclusivity periods, often analyze the nine factors set forth *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997). *See In re Adelphia Comm. Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011) (citing *In re Adelphia Comm. Corp.*

when considering the debtors' motion for an extension of exclusivity and the committee's opposition).

23.     All nine of the *Dow Corning* factors, as discussed below, weigh in favor of granting the Motion:

a.      ***Case Size and Complexity***—This is a complex $38-million condo-hotel redevelopment Chapter 11 case requiring the Debtor to negotiate with DPFI and the City to exit Chapter 11 with the necessary capital structure, redevelopment path, and clear title to the Property to begin the redevelopment stage with a target toward selling units, capturing customer deposits, and transitioning to permanent construction financing, which supports granting the Motion;

b.      ***Sufficiency of Time to Negotiate a Plan***—While the Debtor has been working for the past 120 days to formulate a plan, the financing component is just now coalescing and that component was a necessary pre-condition to meaningful negotiations with DPFI and the City, requiring additional time to attempt to negotiate a consensual plan (the preferred path), which supports granting the Motion;

c.      ***The Debtor's Good Faith Progress Toward Reorganization***—The Debtor has achieved substantial good faith progress toward confirmation in the last 120 days because it now has a clear redevelopment path selected and an identified plan sponsor group, which supports granting the Motion;

d.      ***The Debtor's Post-Petition Payment Status***—The Debtor is current on post-petition insurance premiums and UST fees, which supports granting the Motion;

e. ***The Debtor's Demonstration of a Reasonable Prospect for Confirmation***—The Debtor's Property is valued on an "As Is" FMV basis at $38 million and that value is sufficient to support a confirmable Chapter 11 plan of reorganization that pays creditors in accordance with the terms of the Bankruptcy Code, thereby supporting granting the Motion;

f. ***The Debtor's Progress in Negotiating with Creditors***—The Debtor initially engaged in negotiations with DPFI and the City but it became clear that a pre-condition to meaningful negotiations was a plan funding commitment, which the Debtor anticipates to finalize in the upcoming weeks, after which the Debtor can continue creditor negotiations from a meaningful position, so this factor supports granting the Motion;

g. ***The Amount of Time Elapsed in the Case***—The Debtor has used the full 120 exclusivity period, but this is its first extension request and that request is a brief 60-day extension, which supports granting the Motion;

h. ***The Debtor's Motivation for Seeking to Extend Exclusivity***—The Debtor is seeking to extend exclusivity in good faith to finalize its plan funding commitment and to exhaust negotiations with DPFI and the City to obtain a consensual path to confirmation if possible, so this factor supports the Motion; and

i. ***Existence of an Unresolved Contingency***—The City lien mitigation structure is an unresolved contingency that impacts but does not determine the Debtor's chapter 11 plan viability, which supports granting the Motion.

24. As discussed above, the substantial equity cushion protects DPFI's secured claim and other creditors and parties in interest. The Debtor's requested 60-day extension is brief and

results in no prejudice to creditors and parties in interest on the facts present here. Finally, the Debtor makes this request in good faith to finalize plan funding and exhaust creditor negotiations. Cause, therefore, exists here for the Court to grant the Motion.

## CONCLUSION

25.     The stipulated $38 million "As Is" FMV of the Property adequately protects DPFI, the City, and the Debtor's other creditors, during this brief 60-day extension of the exclusivity periods. The Debtor does not believe that any other creditors or parties in interest have a competing play ready to file. The Debtor has formulated its plan structure, and it just needs a brief extension to finalize its funding commitment.

26.     Cause exists to grant the Debtor a brief 60-day extension of both the plan filing and solicitation exclusivity periods. The Debtor needs this time to finalize its plan funding, exhaust negotiations with DPFI, and progress toward a lien mitigation strategy with the City.

## CERTIFICATE OF PRE-FILING CONFERRAL

DPFI opposes this request. The City does not oppose this request. The UST takes no position on this request at this time.

WHEREFORE, the Debtor requests an order: (i) granting the Motion; (ii) extending the exclusivity and solicitation period by 60 days to August 17, 2026, and October 16, 2026, respectively; and (ii) granting any further relief the Court deems necessary and proper under the circumstances.

Dated: June 11, 2026.

/s/*Kristopher E. Pearson*
Kristopher E. Pearson, Esq.
Fla. Bar. No. 16874
kpearson@dvcattorneys.com
DAMIAN | VALORI | CULMO
1000 Brickel Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960

*Counsel for the Debtor and Debtor in Possession Bloom Hotels 6060, LLC*

11